**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| CITGO PETROLEUM CORPORATION, | § |
| on its own behalf and as subrogee of | § |
| TRICON ENERGY, LTD. | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | §     CIVIL ACTION H-07-2950 |
| | § |
| M/T BOW FIGHTER, ODFJELL SEACHEM, | § |
| and YPF, S.A. | § |
| | § |
| *Defendants.* | § |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant YPF, S.A.'s ("YPF") motion for summary judgment.
Dkt. 9.  Having reviewed the motion, the response, the reply, and the applicable law, the court finds
that YPF's motion for summary judgment should be GRANTED.

Further, pending before the court is defendant Odfjell Seachem and vessel claimant Odfjell
Asia II PTE Ltd.'s (collectively, "Odfjell Defendants") motion to dismiss pursuant to Rule 12(b)(3)
of the Federal Rules of Civil Procedure.  Dkt. 21.  Having reviewed the motion, the response, the
reply, and the applicable law, the court finds that the motion should be GRANTED.[1]

Consequently, YPF's motions to sever (Dkt. 28) and for leave to file a sur-reply (Dkt. 37)
are DENIED as moot.

**BACKGROUND**

This case arises out of a carriage of cyclohexane aboard defendant M/T BOW FIGHTER
("Bow Fighter") from La Plata, Argentina to Houston, Texas.  Dkt. 27 at 2.  YPF had sold the cargo

---

[1]     Because Citgo and Tricon's claims are dismissed pursuant to Rule 12(b)(3), the court need not address the
Odfjell Defendant's Rule 12(b)(6) motion.

of cyclohexane to plaintiff Tricon Energy, Ltd. ("Tricon") pursuant to a Cost and Freight ("CFR")

agreement ("YPF–Tricon CFR Agreement") contemplating shipment aboard the Bow Fighter. Dkt.

27. On March 9, 2005, Tricon sold the cargo to plaintiff Citgo Petroleum Corp. ("Citgo") pursuant

to a separate CFR agreement ("Tricon–Citgo CFR Agreement") contemplating shipment aboard the

Bow Fighter. Dkt. 27, Ex. B at 1. YPF time chartered the Bow Fighter from Odfjell Seachem

("Odfjell"), the vessel's owner pursuant to a charter party agreement ("Charter Party"). Dkt. 9. On

March 17, 2005, YPF issued a bill of lading to Tricon. Dkt. 18, Ex. A(4). The bill of lading

expressly incorporates the provisions from the Charter Party. *Id.* Specifically, the bill of lading

incorporates the following arbitration provision: "Any and all differences and disputes of whatsoever

nature arising out of this Charter shall be put to arbitration. . . . " Dkt. 27 at 9.

Due to mechanical failures, the cyclohexane aboard the Bow Fighter was not delivered to

Houston until June 2005. Dkt. 1, ¶ X. Subsequently, Citgo, on its own behalf and as subrogee of

Tricon, filed this complaint against YPF and the Odfjell Defendants to recover alleged damages

resulting from late delivery. Dkt. 1 at 6-7. YPF moved for summary judgment on all claims pending

against it. The Odfjell Defendants moved to dismiss the remaining claims.

### YPF's MOTION FOR SUMMARY JUDGMENT

### Background

In December 2004, Tricon began negotiating the purchase of cyclohexane CFR  from YPF

to be loaded at  La Plata, Argentina onto the Bow Fighter. Dkts. 9, 19. Tricon and YPF disagree,

however, over the specific agreement controlling the purchase. On January 13, 2005, Tricon sent

YPF a fax ("January 13 Contract") with terms governing the transaction. Dkt. 9, Ex. B. In addition

to setting forth the shipment timeline, the document contained an arbitration clause. *Id.* The

arbitration clause provided that in the event of termination of the agreement, the clause would survive. *Id.* On March 9, 2005, Tricon secured a letter of credit in favor of YPF for the purchase, extending the final load date to March 17, 2005. Dkt. 9, Ex. C. On March 14, 2005, YPF emailed Tricon a document ("March 14 Contract") containing terms relating to the agreement; this document contained a specific no-arbitration clause. Dkt. 9, Ex. E. Later that same day, YPF asked Tricon to amend its letter of credit to further extend the load date to March 23, 2005, and Tricon complied. Dkt. 9, Exs. F, G.[2]  Both the January 13 Contract and the March 14 Contract purported to be the governing instruments unless objected to within twenty four hours. Dkt. 9, Exs. B, E. Neither Tricon nor YPF assert objecting to the other's contract within twenty four hours. En route to La Plata, the Bow Fighter suffered engine problems that delayed its arrival. Dkt. 19. On March 19, 2005, the Bow Fighter, through YPF, the time charterer, finally issued a clean bill of lading for the cyclohexane. Dkt. 9, Ex. H. On the voyage, the Bow Fighter suffered mechanical problems requiring the vessel to divert to Philadelphia for repairs. Dkt. 9. The Bow Fighter did not arrive in Houston, Texas until June 2005. *Id.*

YPF moves for summary judgment. YPF urges that it fulfilled its contractual obligations under the March 14 Contract, the controlling contract. Dkt. 9. In doing so, YPF asserts that its failure to timely deliver the cyclohexane to Houston, Texas did not constitute a breach of contract because it fully performed upon loading the cargo on the Bow Fighter in La Plata. *Id.* YPF further contends that it had no knowledge regarding the Bow Fighter's engine troubles and alleged unseaworthiness. Dkts. 9, 21.

---

[2]      As YPF became aware of the Bow Fighter's delay prior to embarking at La Plata, it informed Tricon. Dkt 9, Ex. F. Tricon consequently amended the loading date on the letter of credit without objection. Dkt 9, Ex G.

Citgo and Tricon, however, claim that the January 13 Contract is controlling and seek to

invoke the arbitration clause in that document. Dkt. 19. Furthermore, Citgo and Tricon claim that

due to YPF's alleged breach of its duties to engage a reasonable carrier under the Texas Business

& Commerce Code § 2.504 and to ensure the seaworthiness of the vessel, YPF is liable for losses

resulting from the delayed delivery of cyclohexane to Houston. *Id.*

Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Citgo and Tricon also request

that summary judgment be denied for lack of ripeness. Dkt. 19. The discovery deadline is October

17, 2008. Therefore, plaintiffs request that the motion be continued so they can conclude discovery.

**Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; there must be an absence of any genuine issue of material

fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). An issue is "material" if its

resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500,

502 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 347 (2001). "[A]nd a fact is genuinely in dispute only

if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*,

463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden

shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.

If the moving party fails to meet this burden, then they are not entitled to a summary judgment and

no defense to the motion is required.  *Id.*

      "For any matter on which the non-movant would bear the burden of proof at trial . . . , the

movant may merely point to the absence of evidence and thereby shift to the non-movant the burden

of demonstrating by competent summary judgment proof that there is an issue of material fact

warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, "the

non-moving party must come forward with 'specific facts showing that there is a genuine issue for

trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348

(1986) (quoting FED. R. CIV. P. 56(e)).  If the burden of proof at trial with respect to an issue lies

with the moving party, the burden is understandably heavier, and that party must show the absence

of a genuine issue of material fact as to each element, rather than any single "essential element," of

the of the claims for which they seek summary judgment.  *U.S. v. Four Parcels of Real Property*,

941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex*, 477 U.S. at 323).

      When considering a motion for summary judgment, the Court must view the evidence in the

light most favorable to the non-movant and draw all reasonable inferences in favor of the

non-movant.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006).  The

court must review all of the evidence in the record, but make no credibility determinations or weigh

any evidence, disregard all evidence favorable to the moving party that the jury is not required to

believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence

supporting the moving party that is uncontradicted and unimpeached.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).  However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*,  754 F.2d 1212, 1221 (5th Cir.1985).

In addition, summary judgment should not be entered unless "plaintiff has had a full opportunity to conduct discovery."  *Anderson*, 477 U.S. at 257.  Under Rule 56(f) of the Federal Rules of Civil Procedure, a party opposing summary judgment must demonstrate 1) why the movant needs additional discovery and 2) how the additional discovery will likely create a genuine issue of material fact.  *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999).  "Such motions are generally favored, and should be liberally granted."  *Id.* at 534 (citation omitted); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) ("A continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citations omitted).

### Analysis

### *Controlling Agreement*

The court must first resolve which contract is controlling.  A novation is "the creation of a new contract in place of the old one."  *Fed. Deposit Ins. v. Waggoner*, 999 F.2d 826, 829 (5th Cir.

1993).  The novation discharges the original obligation, and only the new obligation is enforceable.  *Fulcrum Cent. v. Autotester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.).  The substitution of a new agreement occurs when the second contract is so inconsistent with the first contract that the two cannot exist together.  *Fulcrum Cent.*, 102 S.W.3d at 277; *Scalise v. McCallum*, 700 S.W.2d 682, 684 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).  In the absence of inconsistent provisions, the second contract operates as a novation of the first contract only if the parties to both contracts intend and agree that the obligations of the second contract are substituted for and operate as a discharge of the obligations of the first contract.  *CTTI Priesmeyer v. K & O Ltd. P'ship*, 164 S.W3d 675, 681 (Tex. App.—Austin 2005, no pet.); *Fulcrum Cent.*, 102 S.W.3d at 277.

A party raising the affirmative defense of novation must prove the following: (1) a previous, valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract.  *E.g. Mandell v. Hamman Oil & Refining Co.*, 822 S.W.2d 153, 163 (Tex. App.—Houston [1st Dist.] 1991, writ denied).[3]  It must clearly appear that the parties intended a novation; novation is never presumed.  *CTTI Priesmeyer*, 164 S.W.3d at 680-81.  However, a novation may be inferred where the evidence would not cause reasonable minds to differ as to its effect, at which point a novation becomes a question of law.  *Id.*  A novation will be inferred where a party accepted a contract containing provisions that are inconsistent with those in the original agreement.  *Id.* at 681.[4]

Although neither party explicitly argues a novation occurred, YPF's contention that the March 14 Contract is controlling necessitates a novation or invalidation of the prior January 13

---

[3]       YPF has not plead novation as an affirmative defense.

[4]       Where such inconsistencies are present, and a novation is inferred, the party relying on a novation need not prove each element.

Contract that Citgo and Tricon assert is controlling.[5]  The January 13 Contract contains a clause

mandating arbitration for any and all differences and disputes arising out of the agreement as well

as a sentence stating that the clause shall survive any termination of the agreement.  Dkt. 9, Ex. B.

However, that provision will not be valid in light of the explicit no arbitration clause in the

subsequent March 14 Contract if a novation occurred.  Therefore, in assessing the success of the

novation, the only remaining issue is whether the terms of the March 14 Contract conflicted with the

terms of the January 13 Contract.

The very point of a novation is to substitute a new contract for an old one, and conflicting

terms are expected.  *CTTI Priesmeyer*, 164 S.W.3d at 681.  The no arbitration clause in the March

14 Contract is such a conflict because the January 13 Contract expressly required arbitration.  *See*

*id.* at 680-81.  Since the no arbitration clause in the March 14 Contract conflicts with the arbitration

clause in the January 13 Contract, a novation can be inferred.  *Id.*

Consequently, the existence of a novation is a matter of law in this case.  Plaintiffs have

failed to proffer evidence controverting the inference that a novation occurred.  Moreover, Citgo and

Tricon have not demonstrated how further discovery would create a genuine issue of material fact.

Therefore, the court finds that a novation occurred and the March 14 Contract is controlling.

### *Liability for Late Delivery*

Having found the March 14 Contract controlling, the court will next examine YPF's

obligations under that agreement.  As a general rule, "time is not of the essence of a contract unless

the contract explicitly makes it so."  *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 568 (5th Cir.

---

[5]     Both contracts contain provisions that provide for understood acceptance of the terms in the event that no reply is received within 24 hours.  Dkt. 9, Exs. B, E.  Tricon drafted a 24 hour acceptance clause in the January 13 Contract, and YPF drafted an identical clause in the March 14 Contract.  Neither party submits any evidence of their timely objection to acceptance.  Therefore, the court finds that both contracts were promptly accepted.

1992) (citations omitted). However, if a contract explicitly makes time of the essence, or the contract is of such a nature or purpose that it indicates the parties' intentions that they must perform the contract at or within the time specified, a seller will be liable for late delivery. *Childers*, 968 F.2d at 568. According to a New York trial court, the Uniform Commercial Code ("U.C.C.") § 2-325 suggests that an amended letter of credit will modify and control the date of delivery since the buyer's obligation to pay is suspended so long as there is a letter of credit. *Clark Oil Trading Co. v. J. Aron & Co.*, 659 N.Y.S.2d 426, 429 (Sup. Ct. 1997).

Citgo and Tricon's claim that YPF is liable for late delivery hinges on the acceptance of the January 13 Contract as the controlling contract, as it contained a ship period term that they claim was material to the contract. YPF cites Texas law and Fifth Circuit decisions that plainly state time is not of the essence unless the contract explicitly makes it so. Dkt. 21. In addition to claiming the March 14 Contract is controlling, YPF points to the extended letter of credit stating that the loading needed to be completed by March 23, 2005.[6] Dkt. 9, Ex. G.

The court finds that further discovery will not result in the production of evidence creating a genuine issue of material fact. By merely pointing to the record, YPF has shown that there is an absence of evidence to support Citgo and Tricon's claim of liability for late delivery. Therefore, YPF's motion for summary judgment on the issue of liability for late delivery is GRANTED.

### *Duty to Engage a Reasonable Carrier and to Ensure Seaworthiness*

Having established that YPF is not liable for late delivery, the court now examines whether YPF was under a duty to engage a reasonable carrier or to ensure the seaworthiness of the Bow

---

[6]   Furthermore, the March 14 Contract itself does not indicate a final load date or state that time is of the essence. Dkt. 9, Ex. E.

Fighter.  Under Texas law, where a seller is required to send goods to the buyer pursuant to the

contract and the contract does not require him to deliver the goods to a particular location, then

unless otherwise agreed, the seller must "make such a contract for their transportation as may be

reasonable having regard for the nature of the goods and other circumstances of case."  TEX. BUS.

& COM. CODE § 2.504(1).  The corresponding U.C.C. provision has a comment to the same effect.

U.C.C. § 2.504 cmt. 3 (2004).  However, under both Texas law and the U.C.C., these provisions only

apply when the contract fails to specify the place of delivery.  TEX. BUS. & COM. CODE § 2.504(1);

U.C.C. § 2.504 cmt. 3 (2004).

YPF argues that it is not under a duty to engage a reasonable carrier.  Dkt. 21.  The parties

agree that the contract specifies La Plata and Houston as delivery destinations.  Dkts. 9, 21.  The

Texas Business & Commerce Code § 2.504 and corresponding U.C.C. § 2-504 comment 3 therefore

do not apply in this case.  Accordingly, YPF's motion for summary judgment on the issue of duty

to engage a reasonable carrier is GRANTED.

Shipments designated "CFR" require the seller to pay the costs and freight to transport the

goods to the delivery port but pass title and risk of loss to the buyer once the goods "pass the ship's

rail" at the port of shipment.  *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador
(PetroEcuador)*, 332 F.3d 333, 338 (5th Cir. 2003).  In the event of subsequent damage or loss, the

buyer generally cannot seek relief from the seller.  *Id.*  Generally, a CFR contract does not expressly

require the seller to ensure the seaworthiness of a vessel engaged to transport goods, as Texas law

and the U.C.C. provisions relating to CFR contracts do not impose such a duty on the seller.  TEX

BUS. & COM. CODE §§ 2.320, 2.504; U.C.C. §§ 2-320, 2-504 (2004).

10

Because Citgo and Tricon concede that the contract was a CFR contract, they also agree that all liability passed to them upon loading of the cyclohexane at La Plata.  As Citgo and Tricon concede that YPF can only be liable for events preceding completed delivery of the cargo onto the Bow Fighter, they seek to impose a duty to ensure the seaworthiness of the vessel carrying the cargo. If successful,  YPF would be liable for failing to ensure that the Bow Fighter was seaworthy prior to the cargo being loaded onto the vessel at La Plata, Argentina.

Neither Texas law nor the U.C.C. impose such a duty on a seller in a CFR sale, and the plaintiffs have not cited any cases holding that a seller has such a duty.  Since this is a question of law, and discovery will not produce any genuine issue of material fact, further discovery is not needed.  Accordingly, YPF's motion for summary judgment on the issue of its duty to ensure seaworthiness is GRANTED.

For the foregoing reasons, YPF's motion for summary judgment is GRANTED.

### ODFJELL DEFENDANTS' RULE 12(B)(3) MOTION TO DISMISS

### Background

Citgo, on its own behalf and as subrogee of Tricon, filed this complaint against the Odfjell Defendants to recover alleges damages resulting from the late delivery of the cargo of cyclohexane. Dkt. 1 at 6-7.  Citgo and Tricon claim that the Bow Fighter was unseaworthy prior to the inception of the voyage due to pre-existing engine problems that had caused prior breakdowns and delays in shipment, ultimately delaying delivery until June 2005.  Dkt. 27 at 4.  Citgo avoids asserting any claims under the bill of lading or the Carriage of Goods by Sea Act ("COGSA").  Dkt. 27 at 5. Rather, Citgo's unseaworthiness claim is brought pursuant to general maritime tort law.  *Id.*

Citgo further alleges that as a result of the delays in shipment, Citgo and Tricon suffered delay damages due to a decline in the market value of the cargo. Dkt. 27 at 3. The market price of the cargo of cyclohexane had plummeted by the time it was delivered. Dkt. 1 at 4. To satisfy its obligations under the contract with Citgo, Tricon obtained replacement cyclohexane which it sold to Citgo, realizing a gross loss of $1,167,337.23. *Id.* Subsequently, Citgo and Tricon entered into a settlement agreement for partial payment of the loss. *Id.* Under the terms of the settlement, Citgo paid Tricon $850,000, and Tricon was obligated to pay various expenses. *Id.* Consequently, Tricon sustained a loss of $450,000. *Id*. at 5.

Pursuant to the settlement agreement, Citgo is subrogated to Tricon's $450,000 claim. *Id.* Citgo, as subrogee of Tricon, has asserted an *in personam* claim against the Odfjell Defendants for the $450,000. *Id.* In addition, Citgo asserts against the Odfjell Defendants an individual claim for $1,648,776.89, allegedly resulting from the decline in market value of cyclohexane caused by the delivery delay. *Id.* at 7.

The Odfjell Defendants move to dismiss Citgo's claims against them and the Bow Fighter. Dkt. 17. Citgo's action against the Odfjell Defendants consists of two claims: Tricon's economic loss claim asserted by Citgo as Tricon's subrogee, and Citgo's separate economic loss claim arising out of the same carriage of cargo aboard the Bow Fighter. *Id.* at 2. Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, the Odfjell Defendants move to dismiss Tricon's claim, asserted by Citgo as Tricon's subrogee, because the arbitration provision of the Charter Party, incorporated in the bill of lading issued by YPF to Tricon, mandates the proper venue for dispute resolution. Dkt 17 at 6. In addition, Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Odfjell Defendants move to dismiss Citgo's economic loss claim for failing to state a claim upon which relief

may be granted.  Dkt. 17 at 6.  Alternatively, the Odfjell Defendants move to dismiss Citgo's claim

pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure in favor of arbitration mandated by

the Charter Party.  Dkt. 17 at 6.

## Standard of Review

Although, this circuit has not expressly opined under which procedural provision motions

concurring forum selection clauses must be addressed, motions to dismiss litigation in favor of

arbitration may properly be brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).  Although the Odfjell

Defendants first move to dismiss Citgo's individual economic loss claim pursuant to Rule 12(b)(6)

and then, alternatively, pursuant to Rule 12(b)(3), logic seems to dictate that the question of venue

should be addressed first.  *See Solow Bldg. Co., LLC v. ATC Assocs., Inc.*, 175 F. Supp. 2d 465

(E.D.N.Y. 2001). When addressing a Rule 12(b)(3) motion to dismiss for improper venue, a court

should accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the

plaintiff's favor. *McCaskey v. Cont. Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) (citing

*Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

## Analysis

Whether the parties are required to arbitrate disputes involves a two step inquiry.  The first

step involves two considerations: (1) whether there is a valid agreement to arbitrate between the

parties; and, (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  "When deciding whether the parties

agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law

principles that govern the formation of contracts." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan,*

514 U.S. 938, 939, 115 S. Ct. 1920 (1995) (internal quotation marks omitted)).  "In applying state

law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as

to the scope of the arbitration clause itself must be resolved in favor of arbitration."  *Id.* (quoting *Volt*

*Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76, 109 S.Ct. 1248

(1989) (internal quotation marks omitted).

Next, the court must "determine whether legal constraints external to the parties' agreement

foreclosed the arbitration of those claims."  *Id.* (quoting *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985) (internal quotation marks

omitted).  Citgo, individually and as subrogee of Tricon, does not assert any external legal constraint

that forecloses arbitration of their claims.  Therefore, this court need only determine whether (1) there

is a valid arbitration agreement between the parties; and, (2) whether the dispute in question falls

within the scope of that agreement.  *See Webb*, 89 F.3d at 258.

### *Binding Arbitration Agreement*

Citgo, on behalf of Tricon, does not contest that the bill of lading incorporates a valid London

arbitration provision[7] contained in the Charter Party.  However, Citgo argues that the Odfjell

Defendants, as the movants in the motion to dismiss, did not present proof that Tricon ever took

possession of the bill of lading.  For that reason, Citgo urges that Tricon was never a  "holder" of the

bill of lading; therefore, there is no valid arbitration agreement between the Odfjell Defendants and

Tricon.  However, even assuming that Tricon never came into physical possession of the bill of

---

[7]      *See, e.g.*, Note, Christian B. Miller, M/V Sky Reefer*: Clear Sailing for Foreign Arbitration Clauses Under COGSA*, 18 HOUS. J. INT'L L. 935, 957 (1996) ("The modern commercial world has a great need for certainty and stability in the context of bills of lading for the carriage of goods on an international scale.  There is no place for the kind of uncertainty which a decision to invalidate the [foreign forum selection clause] would have injected into COGSA-covered bills of lading.").

14

lading, the Fifth Circuit has recognized six theories for binding a non-signatory to an arbitration agreement: incorporation by reference,  assumption, agency, veil-piercing/alter ego, estoppel, and third-party beneficiary.  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 516 (5th Cir. 2006).  The Odfjell Defendants assert that Tricon and Citgo should be bound to the arbitration provision incorporated into the bill of lading through agency, estoppel, and third-party beneficiary principles.  Dkt. 29 at 15.

*Agency: Tricon*

The Odfjell Defendants assert that Tricon should be bound by agency principles because it impliedly authorized YPF, through the CFR contract, to obtain the necessary bill of a lading.  Dkt. 29 at 15.  In a CFR contract, the seller of goods is required to arrange shipment with a carrier and must pay the costs associated with the freight of those goods.  *See Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.,* No. 07-155, 2008 WL 686206 (S.D. Tex Mar. 07, 2008).  Therefore, YPF had authority to load the cargo onto the Bow Fighter in exchange for the bill of lading in question.  Consequently, even if the Odfjell Defendants cannot present evidence that Tricon actually "possessed" the issued bill of lading, Tricon is nonetheless bound by the bills terms through agency principles.

In *Taisheng International Ltd. v. Eagle Maritime Services*, Euro Classics, Inc. ("Euro") purchased goods from Taisheng International Ltd. ("Taisheng").  *Taisheng Int'l Ltd. v. Eagle Maritime Servs., Inc.*, No. H-05-1920, 2006 WL 846380, at *1 (S.D. Tex. Mar. 30,  2006).  Upon an agreement with Taisheng, EGL, Inc. ("EGL"), the vessel owner, issued a bill of lading to Euro as consignee and shipped the cargo.  *Id.*  Taisheng received the bill of lading; Euro never obtained physical possession of the bill.  *Id.*  Nonetheless, the district court found that by purchasing the goods

15

from Taisheng, Euro implicitly authorized Taisheng to arrange for the transportation of the goods with EGL. *Id.* at *5. The court noted that generally, where a consignee purchases merchandise from a seller, the seller, as shipper or consignor, is the consignee's agent for the purpose of shipping. *Id.* Therefore, the shipper or consignor is impliedly authorized to enter into the usual and customary transportation contract with the carrier, and the consignee is bound by the terms of that agreement. *Id.* at *4 (citing *United States v. M/V Santa Clara I*, 887 F. Supp. 825, 836 (S.D.N.Y. 2002)). Consequently, the court held that Euro was bound to the forum selection clause in EGL's bill of lading. *Id.* at *5.

In the present case, YPF was authorized through the YPF–Tricon CFR Agreement to obtain a negotiable bill of lading from the carrier it engaged to deliver the cargo. Dkt. 27, Ex. A at 1. YPF time chartered the Bow Fighter from Odfjell Seachem and issued Tricon a bill of lading which incorporated the Charter Party. Just as Euro impliedly authorized Taisheng to obtain a bill of lading, Tricon impliedly authorized YPF to obtain and issue a bill of lading. Therefore, even if Tricon was never in physical possession of the bill of lading, it is nonetheless bound by its terms through agency principles. Consequently, Tricon is bound by the arbitration provision incorporated into the bill of lading through the Charter Party.

### *Agency: Citgo*

Similarly, Citgo, contemplating shipment aboard the Bow Fighter, entered into a CFR purchase agreement with Tricon. This required Tricon to arrange shipment of the purchased cargo. Tricon did not take any additional steps to secure shipment of the cargo because YPF was already required to ship the cargo to Texas pursuant to the YPF-Tricon CFR Agreement. Dkt. 27, Ex. A at 1. Procuring shipment of the cargo on the Bow Fighter satisfied both its obligation under the

YPF–Tricon CFR Agreement  and Tricon's obligation under the Tricon–Citgo CFR agreement. Consequently, Citgo is also bound to the terms of the bill of lading, including the arbitration provision of the Charter Party, issued by YPF to Tricon.  Dkt. 18, Ex. A(4).[8]

### *Scope of Arbitration Provision*

Citgo's individual claim is identical to Citgo's claim as subrogee of Tricon; therefore, both claims will be discussed together for purposes of this section.  Citgo asserts a claim under general maritime tort law for delay damages that resulted from the unseaworthiness of the Bow Fighter.[9] Citgo asserts that its general maritime law tort claim is independent from the bill of lading and, therefore, is outside of the scope of the arbitration provision incorporated therein.

"Courts have distinguished between 'narrow' arbitration clauses, which require arbitration of only those disputes that arise out of the contract, and 'broad' clauses, which govern disputes that 'relate to' or 'are connected with' the contract."  *Adams v. Dell Computer Corp.*, No. 06-089, 2006 WL 2670969, at *5 (S.D. Tex. Sept. 18, 2006) (citing *Pennzoil Exploration & Prod. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).  "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . . " *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1982).

The Fifth Circuit has interpreted a provision stating that, "[a]ny dispute or difference between the parties arising out of this Charter [shall be subject to arbitration]" as a broad arbitration provision.

---

[8]    Because Tricon and Citgo are bound to the arbitration provision through the principle of agency, this court need not address the Odfjell Defendants' estoppel and third-party beneficiary arguments.

[9]    Because the court finds that Citgo's claims, individually and as subrogee of Tricon, are subject to arbitration, the court does not address whether Citgo and Tricon can recover solely economic losses absent any damage to the cargo itself. *See Robins Dry Dock v. Flint*, 275 U.S. 303, 48 S. Ct. 134 (1927); *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020 (5th Cir. 1985) ("We are asked to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort. We decline the invitation.").

*See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.3d 1140, 1144-45 (5th Cir. 1985).  The arbitration clause in the Charter Party states: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration . . . . " Dkt. 17 at 4.  This arbitration provision is nearly identical to the arbitration provision at issue in *Sedco*, which the Fifth Circuit found broad in nature.  *Sedco*, 767 F.3d at 1144-45.  Therefore, the arbitration clause incorporated into YPF's bill of lading is broad in its scope and includes any disputes that relate to or are connected with the bill of lading issued by YPF.  *See Adams*, 2006 WL 2670969, at *5.

Nonetheless, Citgo asserts that a general maritime tort cause action is outside the scope of even a broad arbitration provision.  The court is not persuaded.  The broad arbitration provision at issue is not limited by the identity of the disputants or any particular type of claim.  Furthermore, because the provision is broad, it applies to any disputes that relate to or are connected to the bill of lading.  Notably, Citgo acknowledges the importance of the issuance of the bill of lading by referencing it in their own complaint.  Dkt. 1, ¶ X.  Moreover, the issuance of the bill of lading was necessary for performance due under the YPF–Tricon CFR Agreement and the Tricon–Citgo CFR Agreement.  In *Metallia U.S.A. v. Buyalyk*, the plaintiff, in an effort to avoid the arbitration provision within a bill of lading, pled a negligence cause of action to recover for cargo damage.  *Metallia U.S.A. v. Buyalyk*, No. 98-2265, 1999 WL 717642 (E.D. La. Sept. 13, 1999).  In *Metallia*, the arbitration provision read in relevant part: "All and any claims and disputes under this Bill of Lading shall exclusively be referred to arbitration . . . . " *Id.* at *1.  The Louisiana court found that the broad arbitration provision applied to any type of claim arising out of the subject matter of the bill of lading, whether it be asserted under contract or tort law.  *Id.* at *3.  Similarly, Citgo attempts to avoid the broad arbitration provision in YPF's bill of lading by pleading a general maritime law tort.  However,

18

a broad arbitration provision governs tort claims, of which maritime law torts are a subset. *See Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270 (5th Cir. 2002) (provision in a seaman's employment contract, requiring arbitration "of all claims and dispute arising from this employment," was broad and included general maritime law tort claims against the employer); *Cohen v. Brooke Corp.*, No. 07-594-OG, 2007 WL 4556667, at *3 (W.D. Tex. Dec. 18, 2007) (provision in franchise agreement requiring arbitration of any issue, claim, dispute, or controversy that may arise out of, in connection with, or relating to a Franchise Agreement and/or the relationship of the parties was broad and included tort claims). Consequently, Citgo's general maritime law tort claim falls within the scope of the arbitration provision incorporated into the bill of lading. Likewise, because Tricon's claim, brought by Citgo as subrogee, is also asserted under general maritime tort law, the tort claim falls under the arbitration provision.

Therefore, under the clear language of the Charter Party's arbitration provision incorporated into the bill of lading, the Odfjell Defendants have a right to arbitrate Citgo's claims, whether asserted individually or as subrogee of Tricon. Accordingly, the Odfjell Defendants' motions to dismiss in favor of arbitration is GRANTED.[10] The claims are therefore DISMISSED.

---

[10]    Accordingly, this court need not decide the Odfjell Defendants' Rule 12(b)(6) motion.

## CONCLUSION

For the foregoing reasons, YPF's motion for summary judgment is GRANTED.  Additionally,

the Odfjell Defendants' motion to dismiss is GRANTED.  Therefore, claims asserted by Citgo, on

its own behalf and as subrogee of Tricon, against YPF are DISMISSED with prejudice.  Furthermore,

Citgo's claims, asserted on its own behalf and as subrogee of Tricon, against the Odfjell Defendants,

including the Bow Fighter, are DISMISSED with prejudice.

Accordingly, YPF's motions to sever and for leave to file a sur-reply are DENIED as moot.

Signed at Houston, Texas on June 25, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

20