# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION, | § | |
| on its own behalf and as a subrogee of | § | |
| TRICON ENERGY, LTD. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-2950 |
| | § | |
| M/T BOW FIGHTER, ODFJELL SEACHEM, | § | |
| and YPF, S.A. | § | |
| | § | |
| *Defendant*s. | § | |

## ORDER

Pending before the court are defendant Odfjell Seachem's ("Odjfell") and vessel claimant Odfjell Asia II PTE Ltd.'s (collectively, "Odfjell Defendants") motion to dismiss YPF's third-party cross-claim pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (Dkt. 59) and defendant YPF, S.A.'s ("YPF") motion to stay pending arbitration (Dkt. 61).  Having reviewed the motions, responses, replies, and applicable law, the court DENIES the Odfjell Defendants' motion to dismiss (Dkt. 59) and GRANTS YPF's motion to stay (Dkt. 61).

## I. BACKGROUND

### A.    Factual Background

This case arises out of the carriage of cyclohexane aboard defendant M/T BOW FIGHTER ("Bow Fighter") from La Plata, Argentina, to Houston, Texas.  Dkt. 27.  YPF sold the cargo of cyclohexane to plaintiff Tricon Energy, Ltd. ("Tricon") pursuant to a Cost and Freight ("CFR") agreement ("YPF–Tricon CFR Agreement"), contemplating shipment aboard the Bow Fighter.  *Id.*

On March 9, 2005, Tricon sold the cargo to plaintiff Citgo Petroleum Corp. ("Citgo") pursuant to a separate CFR agreement ("Tricon–Citgo CFR Agreement"), also anticipating shipment aboard the Bow Fighter.  Dkt. 27, Ex. B.  YPF time chartered the Bow Fighter from Odfjell, the vessel's owner, pursuant to a charter party agreement ("Charter Party").  Dkt. 9.  And, on March 17, 2005, YPF issued a bill of lading to Tricon.  Dkt. 18, Ex. A(4).  The bill of lading expressly incorporates the provisions from the Charter Party, including the following arbitration provision: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration . . . ."  *Id.*, Dkt. 27.  Due to mechanical failures, the cyclohexane aboard the Bow Fighter did not arrive in Houston until June 2005, although both original CFR agreements specified a delivery window of April 15, 2005, to April 20, 2005.  Dkt. 1.

**B.    Procedural History**

On September 13, 2007, Citgo, on its own behalf and as subrogee of Tricon, filed this complaint against YPF and Odfjell Defendants to recover alleged damages resulting from late delivery.[1]  Dkt. 1.  YPF ultimately  moved for summary judgment on all pending claims.  Dkt. 9. Likewise, Odfjell Defendants moved to dismiss in favor of arbitration, relying on the arbitration clause included in the Charter Party between YPF and Odfjell.  Dkt. 21.

On June 25, 2008, the court granted both YPF's motion for summary judgment and Odfjell Defendants' motion to dismiss in favor of arbitration.  Dkt. 40.  Citgo then moved for reconsideration of the dismissal of its claims.  Dkt. 42.  The court denied the motion for reconsideration as to the dismissal of the claims against Odfjell Defendants; however, the court granted rehearing on the claims against YPF and, as a result, vacated the order dismissing those

---

[1] For the purposes of these proceedings, both Tricon and Citgo's claims are essentially identical and will be referred to as "Citgo's claims."

2

claims. Dkt. 49.  In granting Odfjell Defendants' motion to dismiss, the court held that Citgo and Tricon were bound to the arbitration provision incorporated into the bill of lading through agency principles.  Dkt. 40. Additionally, the court found that the scope of the arbitration provision was broad and encompassed Citgo and Tricon's claims against Odfjell Defendants.  *Id.*

Accordingly, on August 28, 2008, Odfjell Defendants moved for entry of final judgment, pursuant to Federal Rule of Civil Procedure 54(b).  Dkt. 50.  Subsequently, on November 7, 2008, the last day to join additional parties under the court's amended Scheduling Order, YPF filed a third-party complaint against Odfjell Defendants, seeking indemnity and contribution.  Dkt. 56.  Odfjell Defendants answered the complaint and moved to dismiss in favor of arbitration, based on the Charter Party agreement between Odfjell and YPF, which included a binding arbitration provision. Dkts. 58–59.  In response, YPF moved the court to stay the entire proceeding pending arbitration because of the intertwined nature of the claims.  Dkt. 61.  The court denied Odfjell Defendants' motion for entry of a final judgment because claims were pending against Odfjell Defendants.  Dkt. 66.  Odfjell Defendants subsequently filed a motion to dismiss in favor of arbitration and YPF moved to for a stay pending arbitration; both motions are now pending before the court.

## II. Analysis

This case involves three pairs of claims, all arising from the mechanical failures of the Bow Fighter.  Each "leg" of this litigation will be analyzed separately as the court resolves the motions pending before it.  First, the court summarizes its prior order regarding Citgo's claims against Odfjell Defendants.  Next, the court addresses YPF's indemnification claims against Odfjell Defendants.  Lastly, the court examines Citgo's claims against YPF.

**A.      Citgo's Claims Against Odfjell Defendants**

Citgo's claims against Odjfell Defendants have been addressed previously by this court.  Dkt. 40.  In summary, Odfjell Defendants moved to dismiss Citgo's claims in favor of arbitration pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Dkt. 17.  Citgo responded that it was not bound by the arbitration provision in the Charter Party because Tricon, to whom Citgo acted as subrogee, never became a "holder" of the bill of lading.  Dkt. 27.  However, the court concluded that Citgo was bound to the arbitration provision through agency principles because Tricon impliedly authorized YPF to issue the bill of lading, and the bill of lading incorporated the Charter Party's binding arbitration provision.  Dkts. 16–17.  Therefore, even though Tricon and Citgo never were "holders" of the bill of lading, they impliedly authorized its issuance through their respective CFR shipping agreements.  *Id.*  Further, the court concluded that Citgo's general maritime tort claim was encompassed in the broad arbitration provision of the Charter Party.  Dkt. 27.  Consequently, the court recognized Odfjell Defendants' right to arbitrate Citgo's claims against them and dismissed Citgo's claims in favor of arbitration.  Dkt. 27.

**B.      YPF's Claims Against Odfjell Defendants**

Odfjell Defendants assert that YPF's claims against them should be dismissed in favor of arbitration because the Charter Party agreement between Odfjell and YPF included a binding arbitration agreement.  Further, Odfjell Defendants argue that YPF's claim of indemnification and contribution fall within the scope of the broad arbitration provision.  In response, YPF maintains that the court should stay the matter pursuant to 9 U.S.C. §3, which provides for a mandatory stay.  In the alternative, YPF suggests that the court has the authority to stay this matter based on the court's inherent power to manage its docket.  Because YPF concedes that its claims against the Odfjell Defendants are "covered by the arbitration clause in the Charter Party between them," the primary

4

issue before the court is whether a dismissal or stay is appropriate under the applicable law and facts presented.  Dkt. 61.

The Federal Arbitration Act ("FAA") is codified in 9 U.S.C. §§ 1 through 14.  Under 9 U.S.C. § 3 (also, "Section 3"), a stay is appropriate and mandatory:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "If the issues in a case are within the reach of that arbitration agreement, the district court has *no discretion* under section 3 to deny the stay." *Texaco Exploration and Prod. Co. v. Amclyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Hornbeck Offshore Corp. v. Costal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)) (emphasis added).

Because the court found that the binding arbitration provision contained in the Charter Party between YPF and Odfjell Defendants is broad, Section 3 of the FAA is applicable.  In accordance with 9 U.S.C. § 3, YPF also has asserted its desire to stay the action until arbitration is completed.  Thus, the mandatory stay provision of Section 3 applies, unless Odfjell Defendants can rebut its applicability.

Odfjell Defendants raise several arguments to rebut the applicability of the FAA's mandatory stay provision.  First, Odfjell Defendants argue that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") should govern.[2]  In addition, Odfjell Defendants argue that, under Fifth Circuit precedent, 9 U.S.C. § 3 does not bar dismissal in favor

---

[2] The Convention on the Recognition and Enforcement of Foreign Arbitral Awards is a treaty ratified by the United Nations and signed by the United States that gives full effect to agreements to arbitrate.

of arbitration when all material issues presented in the case are arbitrable.  Lastly, Odfjell Defendants argue that the court should not stay because YPF's invocation of its right to arbitrate the claims at issue was untimely.  The court addresses each argument in turn.

Odfjell Defendants argue that the duty to arbitrate in this case is controlled by the Convention and the mandatory stay provision of the FAA need not apply.  However, as YPF correctly rebuts, the Convention and the FAA are not mutually exclusive.  The Convention, as codified by U.S. statute, states that "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as  ratified by the United States." 9 U.S.C. § 208.  Thus, to the extent that the mandatory stay provision of the FAA, found in Chapter 1, does not conflict with the Convention, it applies to actions and proceedings brought under the Convention.   Accordingly, the mandatory stay provision can be enforced irrespective of the applicability of the Convention.  Therefore, the court finds that the Convention is not a bar to a stay under 9 U.S.C. § 3.

Next, Odfjell Defendants posit that, in *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999), the Fifth Circuit held that dismissal is required, regardless of 9 U.S.C. § 3, when all material issues in the case are arbitrable.  However, this overstates the holding of *Fedmet*.  In *Fedmet*, the Fifth Circuit merely reaffirmed the principle that district courts exercise discretion in dismissing cases in favor of arbitration pursuant to 9.U.S.C. § 3 when all of the issues raised before the district court are arbitrable.  *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999); *see also Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (noting that Section 3 of the FAA "was not intended to limit dismissal of a case . . . when *all* of the issues raised in the district court must be submitted to arbitration").  Thus, although a district court may dismiss in favor of

arbitration when all the issues before it are arbitrable, it is certainly not required to abandon the stay provision of the FAA.

In addition, *Fedmet* is factually distinguishable from this case. In *Fedmet*, the district court dismissed the plaintiff's claims against both defendants because "the arbitration clause was enforceable and that all issues raised in the action were arbitrable." *Fedmet Corp.*, 194 F.3d at 675. However, in this case, there are claims before the district court, namely those between Citgo and YPF, that are not subject to the arbitration provision. Hence, even if the court has the discretion to disregard the mandatory stay provision, there is no compelling reason to exercise such discretion in this case, as some issues are not subject to arbitration.

Finally, Odfjell Defendants argue that YPF's motion to stay pending arbitration is untimely because YPF failed to act, despite having knowledge of their arbitration rights for quite some time, and even moved for summary judgment with respect to Citgo's claims against them. In response, YPF argues that its third-party claims against Odfjell Defendants were timely according to the court's scheduling order and it moved for a stay pending arbitration within six weeks of filing its third-party complaint. Also, YPF notes that the procedural landscape of this litigation has changed since YPF moved for summary judgment, as the court reconsidered Citgo's claim against YPF, and YPF now remains potentially liable to Citgo. Thus, it stands to reason that YPF would subsequently assert a claim against Odfjell Defendants, seeking indemnity or contribution.

To the extent that Odfjell Defendants allege that YPF defaulted or waived its right to arbitrate under 9 U.S.C. § 3, the standards for default and waiver are unmet in this case. Because of the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or *an allegation of waiver, delay or a like defense* to arbitrability." *Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927 (1983) (emphasis added).  Moreover, only "substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 559 F.2d 268, 269 (5th Cir. 1977); *see also In re Mercury Constr. Corp.*, 656 F.2d 933, 940 (4th Cir. 1981) ("[W]hether there is 'default' or 'waiver' in this sense is a question solely for the court itself to resolve."), *aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983).  Further clarifying, the Fifth Circuit has held that "when only a minimal amount of discovery has been conducted . . . the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation." *Tenneco Resins, Inc. v. Davy Intern., AG,* 770 F.2d 416, 421 (5th Cir. 1985).

In this case, YPF has not "substantially invok[ed] the litigation machinery," as its participation has been limited and predominantly responsive.  Even though YPF moved for summary judgment and filed other pleadings, its actions were not prejudicial to Odfjell Defendants.  Further, YPF has not served any written discovery requests against Citgo or Odfjell Defendants and only has answered Citgo's written discovery requests.  Thus, in accordance with *Tenneco Resins*, the court should not "infer waiver."  Further, Odfjell Defendants also seek to arbitrate the claims at issue.  Hence, they cannot claim that arbitration itself prejudices them.  In light of the strong statutory preference for arbitration, YPF's actions do not rise to the level necessary to constitute default or waiver.

In conclusion, both parties agree that arbitration is appropriate under the Charter Party's binding provision.  YPF properly  asserted its right to a stay, pursuant to 9 U.S.C. § 3, and has not forfeited that right.

C.      **Citgo's Claims Against YPF**

YPF also argues that Citgo's claims should be stayed pending arbitration pursuant to Section 3 or based on the court's inherent authority.  The court addresses each, beginning with the statutory basis.

A stay of Citgo's claims pursuant to 9 U.S.C. § 3 is unwarranted because there is no binding arbitration provision between Citgo and YPF.  The Fifth Circuit recognizes that, before granting a mandatory stay under 9 U.S.C. § 3, the district court is required to "first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement."  *Texaco Exploration & Prod. Co.*, 243 F.3d at 909 (citing *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)).  Further, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347 (1960)) (internal quotation omitted).  Accordingly, the court can only grant a stay pursuant to Section 3 if YPF and Citgo agreed to arbitrate their disputes.  Because Citgo never became a "holder" of the bill of lading, which incorporated the Charter Party's arbitration provision, Citgo is not contractually bound to arbitrate its claims against YPF.[3]  Thus, the court cannot grant a stay under 9 U.S.C. § 3.

Although there is no statutory basis to grant a stay, Citgo's claims against YPF nonetheless should be stayed in accordance with the court's inherent authority.  YPF argues that a discretionary

---

[3] The court previously held that Tricon and Citgo were bound to the Charter Party with regard to their claims against Odfjell Defendants because the CFR agreements impliedly provided YPF with agency authority.  Dkt. 40.  However, this agency theory is inapplicable here because Citgo's claims are asserted directly against YPF.  And, YPF was not acting in an agency capacity in this context, as it did with respect to Tricon and Citgo's dealings with Odfjell Defendants.

9

stay is warranted because all of the claims in this litigation arise out of the same occurrence and are inextricably intertwined.  Further, it asserts that the policies of promoting judicial economy, avoiding inconsistent results, and enforcing arbitral awards are best served by staying these claims.  In response, Citgo argues that YPF has waived its right to seek a stay, due to its active involvement in the litigation process, and that a stay would prejudice it because it has incurred financial costs and expended efforts in this forum.

It is well established that a "District Court has broad discretion to stay proceedings as incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636 (1997).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163 (1936).  In the context of granting a discretionary stay pending arbitration, the Fifth Circuit has stated that "the moving party bears a *heavy burden* to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly." *Costal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985) (emphasis added).  Further, the Fifth Circuit emphasized that, although inherent power should not be abused, it is discretionary and "largely unreviewable." *Id.*

"[A] stay may also be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined." *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964).  More importantly, the Fifth Circuit has affirmed stays of nonarbitrable claims when related arbitrable claims needed to be resolved. *See, e.g.*, *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) (staying corporations nonarbitrable claims against business associates because the related claims amongst business associates were subject to arbitration); *Sibley*

*v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976) (staying nonarbitrable federal securities claims pending the outcome of arbitrable contractual issues because the former were dependent on the latter). Here, a discretionary stay is appropriate because all the claims in this litigation arise out of the mechanical failures of the Bow Fighter and the claims are tightly coupled. As discussed, this court previously dismissed Citgo's claims against Odfjell Defendants in favor of arbitration and found that YPF's claims against Odfjell Defendants are also arbitrable. With regard to Citgo's claims against YPF, the court finds that the parties are not bound to arbitrate these claims. Nonetheless, because the same facts and events give rise to the claims, many of the issues involved in this case may be resolved in arbitration. Such issues include, but are not limited to: the nature of the various agreements between the parties, the existence and scope of duties potentially owed by the defendants, and the mechanical condition of the Bow Fighter. Simultaneously litigating these issues would be inefficient and may lead to inconsistent results.

However, Citgo argues that the *Costal (Bermuda)* court cautions against such discretionary stays. Yet, the facts of that case are quite distinguishable. In *Costal (Bermuda)*, the district court granted a discretionary stay in an admiralty proceeding, pending the arbitration of claims involving the same plaintiff and third-party defendant. In reviewing the decision, the Fifth Circuit declined to reverse the district court, but explained that "if some claims are arbitrable and others are not and they are easily severable, . . . the court should stay proceedings as to those claims which are arbitrable." *Costal (Bermuda)*, 761 F.2d at 204 n.6. (*citing Wick v. Atl. Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)). More importantly, the Fifth Circuit did not overturn the district court's decision to stay the nonarbitrable claims. *Id.* at 200. Thus, it was material to the *Costal (Bermuda)* holding that the claims were "easily severable." In contrast, it cannot be said that the nonarbitrable claims in this case are "easily severable."

Next, Citgo argues that it will be unduly prejudiced if the court grants a discretionary stay of its claims against YPF.  In particular, Citgo argues that it has incurred considerable expense in litigation and has produced documents that may not have been discoverable in arbitration.  But, as noted previously, the Fifth Circuit has held that "the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation." *Tenneco Resins, Inc.*, 770 F.2d at 421.  And, prejudice is avoided when the district court tailors the stay to not "prejudice the non-moving litigant unduly." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2nd Cir. 1991) (citing *Nederlandse*, 339 F.2d at 442).

Here, any prejudice that may arise from the expense and disclosure appears minimal and is largely speculative.  Thus, it does not defeat the necessity of a stay to promote judicial efficiency and prevent inconsistent results.  Citgo produced the documents at issue as part of its initial disclosures, not in response to YPF's discovery requests.  Moreover, because the claims are merely stayed, Citgo may eventually litigate its claims in this forum, making litigation costs and initial disclosures inevitable.  In comparison, the *Costal (Bermuda)* court feared that claims would be "tabled indefinitely if the arbitration remained stymied" due to a related bankruptcy.  *Costal (Bermuda)*, 761 F.2d at 204 n.6.  Again, *Costal (Bermuda)* is distinguishable, and the facts in the instant case do not support a finding of prejudice consistent with that in *Costal (Bermuda)*.

Finally, Citgo argues that YPF has waived its right to seek a discretionary stay.  However, waiver is relevant only to rebut a mandatory stay under 9 U.S.C. §3.  *See Moses H. Cone Mem. Hosp.*, 460 U.S. 24–25 (discussing waiver as a defense relevant to Section 3 of the FAA).  Because the court is staying Citgo's claims pursuant to its inherent authority, waiver, as Citgo asserts it, is inapplicable.  Assuming *arguendo* that it did apply,  as addressed in the context of Odfjell

Defendants, YPF has not "invoked the substantial machinery of litigation," thereby constituting waiver.

The court finds that YPF has met its burden of proving that a discretionary stay is warranted in this case, as the claims involve similar facts and issues.  And, Citgo has failed to meet the heavy burden of demonstrating that it would be unduly prejudiced by the stay.  Having determined that claims arising from the same incident between two pairs of the same three parties should proceed to arbitration, in order to promote judicial efficiency and prevent inconsistent results, the court finds it necessary to stay the third set of claims: Citgo's claims against YPF.

### III. CONCLUSION

Since the claims arise from the same occurrence, and the nature of these claims is interconnected, a stay would best suit the policies of judicial economy and avoidance of inconsistent results.  Accordingly, the court finds that the claims between YPF and Odfjell Defendants and the claims between Citgo and YPF should be stayed.  Specifically, the court stays YPF's claims against Odfjell pursuant to the mandatory stay provision of 9 U.S.C. § 3, and Citgo's claims against YPF are stayed in accordance with the court's inherent power to effectively manage its docket.  Therefore, Odfjell Defendants' motion to dismiss (Dkt. 59) is DENIED and YPF's motion to stay pending arbitration (Dkt. 61) is GRANTED.

Signed at Houston, Texas on April 7, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY