UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION ON ITS OWN BEHALF AND AS SUBROGEE OF TRICON ENERGY, LTD. | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION H-07-2950 |
| M/T BOW FIGHTER, et al., | § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff CITGO Petroleum Corporation's ("Citgo") motion to reopen this case (Dkt. 75) and vessel claimant Odfjell Asia II PTE Ltd.'s ("Odfjell Asia") motion for an order requiring Citgo's counsel to return the original Letter of Undertaking to Odfjell Asia (Dkt. 76), which is contained within its response to Citgo's motion to reopen the case.[1]  After considering the motions and related filings, the arguments of counsel at the hearing held on June 29, 2011, and applicable law, the court is of the opinion that Citgo's motion should be GRANTED IN PART AND DENIED IN PART and Odfjell Asia's motion should be GRANTED..

**I. BACKGROUND**

The lawsuit involves damages allegedly suffered when the delivery of cargo was significantly delayed after the vessel carrying the cargo experienced an engine failure.  The case has been stayed

---

[1] Odfjell Asia phrased its request for an order requiring that Citgo return the Letter of Undertaking as a "request" rather than a "motion."  However, the parties had ample notice of the request and argued its merits during the hearing held relating to Citgo's motion.  The court therefore construes the request as a motion.

since April 7, 2009, pending the outcome of two arbitrations that have yet to be initiated. Citgo now requests that the case be reopened.

Defendant Odfjell Seachem chartered the M/T Bow Fighter to defendant YPF S.A. ("YPF") in February 2004. Dkt. 1. In January 2005, YPF entered into a contract with Tricon Energy, Ltd. ("Tricon") for the shipment of 4,000 MT of cyclohexane ("January 13th Contract"), which was to be shipped CFR Houston. *Id.* The delivery window specified in the contract was between February 15 and March 15, 2005. *Id.* Tricon sold the cargo to Citgo on March 9, 2005. *Id.* The sales contract between Tricon and Citgo specified that the cargo be shipped CFR Freeport, Texas during a delivery window from April 15 to April 20, 2005. *Id.*

On March 17, 2005, the M/T Bow Fighter arrived in La Plata, Argentina. *Id.* The vessel was loaded the cargo of cyclohexane, and it set sail for the United States. *Id.* While en route to the United States, the Bow Fighter suffered a major engine breakdown, which required a change in course to Philadelphia for repairs. *Id.* The repairs delayed the arrival to the Houston/Freeport area by approximately two months. *Id.* The cargo was not delivered until June 2005. *Id.*

According to Citgo, the market price of cyclohexane had significantly decreased in the interim, causing Citgo and Tricon to suffer a financial loss due to the delay in delivery, which led to the initiation of this lawsuit. Citgo contends that the M/T Bow Fighter was unseaworthy prior to and at the inception of the voyage and that Tricon thus holds a maritime lien against the M/T Bow Fighter. *Id.* Citgo and Tricon entered into a settlement agreement, and under that agreement Citgo is subrogated to Tricon's loss and is entitled to its lien. *Id.* Citgo also claims that it sustained monetary damages as a result of having to sell the product at a loss. *Id.* Thus, Citgo claims it holds a lien against the M/T Bow Fighter in its own right. *Id.* Additionally, Citgo contends that Odfjell failed to exercise due diligence to provide a seaworthy vessel, that YPF breached its contract to

deliver the cargo within the delivery window and that, as such, Citgo, as subrogee of Tricon, holds an *in personam* claim against Odfjell Seachem and an *in personam* claim against YPF. *Id.*

In March of 2008, Odfjell Seachem and Odfjell Asia, on behalf of the M/T Bow Fighter, filed a motion to dismiss Citgo's claims against Odfjell Seachem and the M/T Bow Fighter pursuant to Federal Rule of Civil Procedure 12(b)(3). Dkt. 17. Odfjell claimed that the arbitration provision in the Charter Party, which was incorporated into the bill of lading issued by YPF to Tricon, mandates arbitration of disputes in London. *Id.* On June 25, 2008, the court issued a memorandum opinion and order finding that both YPF and Citgo were bound by the arbitration provision of the Charter Party and that Odfjell Seachem and the M/T Bow Fighter had the right to arbitrate Citgo's claims. Dkt. 40. The court thus dismissed Citgo's claims against Odfjell and the M/T Bow Fighter with prejudice and entered a final judgment *Id.*

In the same memorandum opinion and order, the court granted a motion for summary judgment filed by YPF, thus dismissing Citgo's claims against YPF. Dkts. 9, 40. YPF contended that a contract that it emailed to Tricon on March 14, 2005 ("March 14th Contract"), was the controlling contract and that it (YPF) fully performed its contractual obligations upon loading the cargo on the M/T Bow Fighter in La Plata. Dkt. 40. YPF also claimed that it had no knowledge of the M/T Bow Fighter's engine issues and alleged unseaworthiness. *Id.* Citgo and Tricon, on the other hand, claimed that the January 13th Contract was the controlling document; the January 13th Contract has an arbitration clause and the March 14th Contract has an explicit *no arbitration* clause. *Id.* The court held that the March 14th Contract was controlling and granted YPF's motion for summary judgment, finding that under the March 14th Contract, YPF did not have a duty to ensure seaworthiness, did not have a duty to engage a reasonable carrier, and was not required to deliver the

cargo during the timeframe set forth in the original contract.  *Id.*  Since this order disposed of all claims, the court entered final judgment.  Dkt. 41.

However, on August 12, 2008, the court issued an order granting a motion for reconsideration filed by Citgo.  Dkts. 42, 49.  After reconsidering, the court denied YPF's motion for summary judgment, without prejudice, and vacated the final judgment that had been issued in conjunction with the order granting YPF's and Odfjell's motion to dismiss.  Dkt. 49.  The court, however, denied Citgo's motion for reconsideration as it pertained to Citgo's request that the court reconsider the dismissal of its claims against Odfjell Seachem and the M/T Bow Fighter.  *Id.*

Soon thereafter, YPF filed a third-party complaint against Odfjell (Odfjell Seachem and Odfjell Asia),[2] claiming that its agreement with Odfjell Seachem contained a warranty that the vessel was maintained, seaworthy, and fit for the work to be done by it.  Dkt. 56.  As third-party defendants, Odfjell Seachem and Odfjell Asia filed a motion to dismiss YPF's claim pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that the claims, including the claim of indemnification and contribution, should be submitted to binding arbitration pursuant to the Charter Party.  Dkt. 59.  YPF moved for a stay pending arbitration.  Dkts. 61, 66.  YPF conceded that its claims against the Odfjell defendants are covered by the arbitration clause in the Charter Party, but it claimed that a stay, rather than dismissal, was appropriate pursuant to the Federal Arbitration Act ("FAA").  *See* Dkt. 73.  The court agreed that a stay, rather than dismissal, was appropriate.  *Id.*

YPF also moved for a stay relating to the claims asserted against it by Citgo, arguing that Citgo's claims against it (YPF) should be stayed pending the arbitration between YPF and the Odfjell defendants and the arbitration of Citgo's claims against Odfjell.  Dkt. 67.  The court found that a stay of Citgo's claims under the FAA was inappropriate because Citgo never agreed to

---

[2] Odfjell Asia is the owner and vessel claimant of the M/T Bow Fighter.  Dkt. 56.

arbitrate its claims against YPF, but it nevertheless stayed the claims, on April 7, 2009, pursuant to its inherent authority to manage its own docket. Dkt. 73. Because all claims were stayed pending arbitration, the court administratively closed the case pending arbitration on February 8, 2011. Dkt. 74.

Despite the fact that the court stayed the case as it pertained to Citgo's claims against YPF pending arbitration more than two years ago, neither Citgo nor YPF have initiated an arbitration against Odfjell. Dkts. 75, 76. Citgo claims that, "[a]fter careful consideration of the costs of London arbitration, as well as several procedural and substantive obstacles which would impact the viability of CITGO's claims and /or recovery against Odfjell and the BOW FIGHTER, CITGO opted not to pursue claims against these two entities."[3] Dkt. 78-2. According to Citgo, since it is not pursing its claims against Odfjell, YPF has effectively stalled the case by failing to initiate arbitration against Odfjell. Dkt. 75.

YPF opposes Citgo's motion to reopen, claiming that it is *Citgo*'s responsibility, as plaintiff, to advance the case, not YPF's, and that if Citgo wishes to pursue its claims against YPF, it must arbitrate its claims against Odfjell first. Dkt. 77. YPF also argues that it has a right to bring its arbitration against Odfjell pursuant to the court's order and that the stay should not be lifted because considering Citgo's claims against YPF before the YPF/Odfjell matter is resolved would run contrary to judicial economy and lead to inconsistent results. Dkt. 81. Additionally, YPF contends that Citgo may not reopen the case at this juncture because it cannot meet the criteria set forth in Federal Rule of Civil Procedure 60(b) for relief from a final judgment, order, or proceeding. *Id.*

Odfjell Asia also requests that the court deny Citgo's motion to reopen the case. Odfjell Asia

---

[3] During the hearing Citgo conceded that its ability to arbitrate its claims against Odfjell in London were likely time-barred.

5

argues that Citgo's claims against the M/T Bow Fighter, *in rem*, were dismissed with prejudice on June 25, 2008, and that Citgo cannot now reopen claims that were dismissed with prejudice in favor of arbitration. Dkt. 76. Odfjell also asserts that Citgo has waived its right to arbitrate its claims against Odfjell because it has failed to initiate the arbitration even though it has been almost three years since the court dismissed Citgo's claims against the M/T Bow Fighter, with prejudice, in favor of arbitration. *Id.* Odfjell Asia therefore requests that the court order Citgo to return a $2,500,000 Letter of Undertaking issued on January 7, 2008 by its insurer, the Britannia Steamship Insurance Association Limited, which was provided in consideration of Citgo's agreement not to seize or arrest the M/T Bow Fighter for security relating to its claim against the vessel. *Id.*; *see also* Dkt. 29-5 (Letter of Undertaking). In response to this argument, Citgo argued during the hearing that it has not returned the Letter of Undertaking because the letter may be necessary to secure YPF's claims against Odfjell for indemnification. Odjfell Asia's counsel asserted that the Letter of Undertaking was specific to Citgo and cannot be used to secure YPF's claims.

## II. ANALYSIS

A.   Citgo's Claims Against YPF

The court stayed Citgo's claims against YPF pending the arbitrations pursuant to its inherent authority to manage its own docket.[4] It is that inherent authority that gives the court the power to lift the stay should the court deem such an action appropriate. YPF claims that, if the court lifts the

---

[4] While, technically, Citgo moved to reopen the case rather than lift the stays, the parties appear to have construed the request as a request to not only reopen the case administratively but to lift the stays imposed by the court's April 2009 order. *See, e.g.*, Dkt. 75 at 4 ("CITGO . . . respectfully requests that the Court grant its Motion and reopen this case so that CITGO may pursue its claims against the vessel, *in rem*, and against YPF S.A., *in personam*."); Dkt. 77 ("The same factual and legal bases for the Court's April 7, 2009 Stay Order still exist . . . ."); Dkt. 81 at 3 ("[J]udicial economy and the desire to avoid inconsistent results militate against lifting the stay here . . . ."); Dkt. 81 at 4 (Citgo's untimely Motion to Reopen is, in actuality, a motion for relief from the Court's April 7, 2009 Order [staying the case]."); Dkt. 83 ("CITGO is only asking the Court to lift the stay of CITGO's claims against YPF . . . and reinstate the case on the court's active docket."). The court, likewise, construes the motion as a motion to reopen and to lift the stays imposed by the April 2009 order.

stay, it is in essence reconsidering its order staying the case pending arbitration and that its power to reconsider the order is contingent on Citgo presenting grounds for relief from the "final judgment, order, or proceeding" under Rule 60(b). Fed. R. Civ. P. 60(b); Dkt. 81.

The court is not reconsidering its order staying the case. That order was appropriate at the time it was entered. However, it was entered over two years ago. Since that time, contrary to the court's understanding (and the parties' representations) of the future chain of events at the time, neither YPF nor Citgo has initiated arbitration. Moreover, Citgo has now affirmatively represented that it does not intend to initiate arbitration. Thus, while in 2009 it appeared that staying all of the pending claims in the case pending the arbitrations would serve judicial economy, now the picture has changed. YPF has not initiated arbitration against Odfjell yet, and, in fact, it does not appear that it will even be necessary for YPF to pursue its claims against Odfjell if YPF is eventually found not to be liable to Citgo. It therefore does not make sense to wait indefinitely, based on a decision to arbitrate that may or may not be made by YPF, before considering Citgo's claims against YPF. As the court noted in the order staying the case, "'a court should tailor its stay so as not to prejudice other litigants unduly.'" Dkt. 73 (quoting *Costal (Bermuda Ltd. V. E.W. Saybolt & Co.*, 761 F.2d 198, 204 n.6 (5th Cir. 1985)). In the interest of judicial economy given the current status in this case, the court finds that it can best "tailor the stay" and manage its docket by considering Citgo's claims against YPF. Accordingly, the court GRANTS IN PART Citgo's motion to reopen the case, REOPENS the case, and LIFTS the stay relating to Citgo's claims against YPF.[5]

**B.    Citgo's Claims Against the M/T Bow Fighter**

However, Citgo's motion to reopen the case as it pertains to its claims against the M/T Bow

---

[5] The stay remains in effect with regard to YPF's claims against Odjfell, which was entered pursuant to the FAA rather than pursuant to the court's inherent authority. *See* Dkt. 73 at 5 ("Under 9 U.S.C. § 3 . . ., a stay is appropriate and mandatory . . . .).

7

Fighter is DENIED. The court dismissed Citgo's claims against the M/T Bow Fighter *with prejudice* on June 25, 2008, and it denied Citgo's motion for reconsideration of that order on August 12, 2008. Dkts. 40, 49. Citgo has presented no arguments justifying the extraordinary measure of reconsidering these orders three years after they were entered. *See Ackermann v. United States*, 340 U.S. 193, 71 S. Ct. 209 (1950) (finding no "extraordinary circumstances" justifying relief under Rule 60(b)(6)). Moreover, in its supplemental memorandum, Citgo states: "To the extent CITGO's Motion to Reopen suggested otherwise, CITGO clarifies that it has no intention of pursuing the BOW FIGHTER or her owners in London arbitatration or *any other forum* for recovery arising out of the events detailed in its Original Verified Complaint." Dkt. 78-2 at 2 (emphasis added). Thus, Citgo has conceded that it will not pursue its claims against the M/T Bow Fighter.

**C.      The Letter of Undertaking**

Because this court dismissed Citgo's claims against the M/T Bow Fighter with prejudice in favor of arbitration and Citgo has affirmatively represented that it does not intend to pursue the claims in any forum, Citgo has no need to retain the Letter of Undertaking issued by Odfjell Asia's insurer. While Citgo argues that security may be needed if its claims against YPF are successful and YPF shows that it is entitled to indemnity from Odfjell, the Letter of Undertaking was specific to *Citgo*'s claims against the vessel. *See* Dkt. 29-5 (Letter of Undertaking) ("This letter is limited to the *in rem* claim which may be asserted **by you** against the M/V BOW FIGHTER . . . and is to run only in favor of Citgo Petroleum Corporation on its own behalf and as subrogee of Tricon Energy, Ltd." (bold emphasis added)). Since Citgo currently has no viable claims against the M/T Bow Fighter, it has no need to retain the Letter of Undertaking. Accordingly, Odfjell Asia's request that

the court order Citgo to return the Letter of Undertaking is GRANTED. Citgo is hereby ORDERED to return the Letter of Undertaking.

### III. CONCLUSION

Citgo's motion to reopen (Dkt. 75) is GRANTED IN PART AND DENIED IN PART. Citgo's motion to reopen as it pertains to reopening the case, in general, is GRANTED. The case is hereby REOPENED. Citgo's motion to lift the stay relating to Citgo's claims against YPF is GRANTED. The stay entered relating to Citgo's claims against YPF is hereby LIFTED. However, Citgo's motion to lift the stay so that it may pursue *in rem* claims against the M/T Bow Fighter, which were dismissed long ago with prejudice, is DENIED. Additionally, Odfjell Asia's motion for an order requiring Citgo to return the Letter of Undertaking relating to the claims asserted against the M/T Bow Fighter in this case is GRANTED. Citgo is hereby ORDERED to return the Letter of Undertaking forthwith.

It is so ORDERED.

Signed at Houston, Texas on June 30, 2011.

_____
Gray H. Miller
United States District Judge